## CLEMMONS v. UNITED STATES.
### Civ. No. 227–M.

United States District Court
N. D. Florida, Marianna Division.
June 13, 1952.

James A. Mulkey, Geneva, Ala., James N. Daniel, Chipley, Fla., for plaintiff.

George Earl Hoffman, U. S. Atty., Pensacola, Fla., Hayford O. Enwall, Asst. U. S. Atty., Gainesvilla, Fla., for defendant.

DE VANE, Chief Judge.

On Sunday, March 11, 1951, Carthell Allred, Ralph English and Odell English met instant death in a collision of the 1936 Ford Coach, in which they were riding, with a U. S. Navy Tractor-trailer at a point on U. S. Highway 90 about two and one-half miles east of Chipley, Washington County, Florida. The driver and relief driver of the Navy vehicle were not seriously injured.

Suits were instituted by representatives of each of the deceased and the cases were consolidated for trial. As each cause of action is different a separate Memorandum Decision will be filed in each case.

The evidence shows that the three deceased persons came home for the weekend from their respective jobs in central Florida in the Ford car owned by Floyd English, under an arrangement of expense sharing as to gas and oil. They all lived in close proximity to one another and had been friends for many years. They were returning to their jobs at the time of the accident; thus their venture was a joint enterprise and not that of host and guests.

The only eye witnesses to the accident were Tommy Tharpe and Mrs. Geraldine Tharpe working in a nearby field, and Edgar O. Wells and Alvin J. Venable, enlisted men of the U. S. Navy, the driver and relief driver, respectively, of the Navy vehicle. Shortly after the accident mem-

bers of the Highway Patrol arrived at the scene, viewed the demolished Ford and damaged Navy tractor at the point where they came to a stop after the collision. One of the patrolmen was called as a witness in the case and testified as to his version of how the accident happened and what Wells stated, with reference to the accident while still at the scene. Also a number of spectators stopped at the scene of the accident and one of these was used as a witness in the case to testify as to how Venable stated the accident happened while at the scene of the accident. In addition, a number of photographs were taken of the roadway, tractor-trailer and the demolished Ford and offered in evidence in the case. The testimony of the eye witness Tharpe and Mrs. Tharpe is in sharp conflict with that of Wells and Venable and the truthfulness of the testimony of these witnesses can be better determined in the light of the physical evidence of the case which is not in conflict.

From this physical evidence the court is also in position to determine the claims of negligence of the respective parties without too much elaboration upon the conflict in the testimony of the eye witnesses. For these reasons reference will first be made to the physical evidence before the court.

The evidence shows, without contradiction, that the left front part of the Ford came in contact with the right front of the Navy tractor. The evidence further shows that the Ford came to rest, on its top, in the ditch, on its side of the highway, about thirty feet beyond the point of impact and that the tractor-trailer came to rest, upright, in the ditch off its side of the highway, about two hundred and fifty feet beyond the point of impact. The evidence further shows that as a result of the collision Venable, the Navy relief driver, was thrown from the Navy tractor into the ditch on the south side of the highway, which was the Ford's lane of travel. There is no conflict between the parties with reference to this physical evidence pertaining to the accident.

As stated above, the conflict comes in the testimony of the eye witnesses. Tommy Tharpe and Mrs. Geraldine Tharpe testified that the tractor, on approaching an automobile going in the same direction, attempted to slow down to permit the oncoming Ford to pass both vehicles and that in the process of attempting to slow down the left front wheel of the tractor seemed to lock and the tractor veered into the lane of travel for the Ford, which was the cause of the accident. Wells and Venable, the enlisted men of the U. S. Navy, the driver and relief driver, respectively, of the Navy vehicle, testified that as the Ford passed the vehicle in front of the Navy vehicle that it ran off the shoulder of the highway and that when it came back onto the highway it ran over into the tractor's lane of travel and that the collision occurred on the north side of the highway.

The physical evidence set out above completely refutes the testimony of Wells and Venable. It does not appear to the court possible for the left front part of the Ford to have been in collision with the right front part of the tractor, when the tractor was completely in its lane of travel, and produce the damage that was produced to both vehicles and then for the Ford to land in the ditch off its own lane of travel only thirty feet from the point of impact. There isn't but one way in which this accident could have happened, as the physical evidence in this case discloses, and that was for the tractor to "jack-knife" to the left before the Ford reached it, because that is the only way the left front of the Ford could have come in contact with the right front of the tractor, for Venable to have been thrown uninjured into the ditch on the south side of the highway, and for the vehicles to have stopped where they were found following the accident.

There is considerable evidence in the record supporting this conclusion. Wells testified that as he was driving west on U. S. Highway 90 he noticed another automobile in front of him traveling in the same direction at a lesser speed. Wells'

speed at the time was between fifty and fifty-five miles per hour. The car in front of the Navy vehicle went over the crest of a hill, some distance ahead of the tractor and when the tractor reached the crest of the hill Wells estimated the other automobile was approximately eight hundred feet in front of the tractor. Wells also noticed the oncoming Ford. He testified further that there wasn't time for him to pass the automobile in front of the tractor before the Ford would meet the automobile and tractor. He, therefore, slowed down the tractor-trailer to approximately thirty-five to forty miles per hour; that when he applied the brakes of the tractor the left front wheel of the tractor appeared to "grab", which pulled it into the other lane of travel. Wells testified further that the trailer brakes were operated by hand and not automatically with the tractor brakes and that he, at no time, applied the hand brakes on the trailer, but depended upon controlling the tractor-trailer by use of the tractor brakes alone.

The Highway patrolman testified that Wells told him, while at the scene of the accident, that when he applied brakes to the tractor it threw the same into the lane of travel of the oncoming Ford and that the collision between the two vehicles occurred as the result of the Navy tractor being inside the other lane of travel.

The witness, Prescott, who stopped at the scene of the accident, testified that Venable stated in his presence that when the brakes were applied to the tractor the vehicles "jack-knifed" and that this caused the accident.

Counsel for defendant argues vigorously that had the failure to apply the brakes of the trailer caused the vehicles to jack-knife that they would, of necessity, jack-knifed in the opposite direction, but at another point in his brief he states that "At the instant of the impact the *Navy trailer's momentum* caused it and the tractor to jack-knife" and the evidence shows that the tractor jack-knifed to the left and not to the right. It was in that position when the tractor-trailer came to rest after the accident.

■ Without further elaboration upon the conflict in the testimony in this case, the court finds and holds that this accident was the result of the negligence of the Navy personnel in failing to apply the hand brakes to the trailer when it became necessary to reduce the speed of the tractor-trailer to permit the oncoming Ford to pass and to avoid striking the automobile in front of the tractor. The court also finds and holds that no one in the Ford was guilty of contributory negligence.

Carthell Allred, deceased, left two minor children—one born February 28, 1938 and the other April 9, 1940. The mother of these children had divorced Allred and at the time of her separation from him she took the children to her father, plaintiff in this case, who has cared for them ever since. Shortly after the divorce Allred joined the Army and during his service in the Army contributed such amount to the children's support as the law allowed to those in the Armed Service. Upon Allred's discharge he lived for a time with plaintiff and his children and worked on his father-in-law's farm. He does not have a good record of employment, at a fixed compensation, since being discharged from the Army. From February 5, 1951 to the date of his death he had received wages in the sum of approximately $360 an average weekly wage of approximately $60. Since his discharge from the Army he has contributed little to the support of his children. The record shows that from August, 1946 to March 11, 1951 his total contribution to their support amounted to approximately $440.

■ Plaintiff is a farmer and has been a farmer practically all his life. Allred spent most of his life, up until shortly before his death, on the farm also, and this, no doubt, accounts for his poor showing of earnings. The law in Florida is well settled that a father is legally liable for the support of his children and that they are entitled to recover substantial damages in an action for his wrongful death, without regard to whether the decedent was the sole support of the children. In fact, minor children are entitled to recover for the

death of their father although the father was not contributing anything to their support. Butler v. Morgan, 157 Fla. 1, 24 So.2d 571.

■ Based upon the evidence in the case as to the financial circumstances of plaintiff, as to the needs of the children during their minority, based upon the assumption they will continue to live with their grandparents, which assumption is supported by the evidence, the court finds and holds that plaintiff is entitled to recover, on and in behalf of the older child, Jarow Carthell Allred, the sum of $4,000 and on behalf of the younger child, Geretha Allred, the sum of $5,000.

A final judgment will be entered in conformity with this Memorandum Decision.